UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

KAREN SERCU, individually, and
DANA SERCU, individually, and as
Husband and Wife,

           Plaintiffs,

v.

LABORATORY CORPORATION OF
AMERICA, dba LabCorp,

           Defendant.

3:09-cv-0619-LRH-RAM

ORDER

Before the court is defendant Laboratory Corporation of America's ("LabCorp") motion for summary judgment. Doc. #36.[1] Plaintiffs Karen and Dana Sercu ("the Sercus") filed an opposition (Doc. #39) to which LabCorp replied (Doc. #46).

**I.    Facts and Procedural History**

LabCorp is a scientific laboratory company that collects, handles and tests blood specimens. In 2007, Karen went to a LabCorp facility for a series of blood ammonia tests. Karen alleges that LabCorp did not immediately cool her blood samples in accordance with LabCorp's testing procedures which caused abnormally high ammonia readings. Based on these test results, Karen was diagnosed with Hyperammonemia and prescribed lactulose which allegedly contributed

---

[1] Refers to the court's docket number.

to and exacerbated her irritable bowel syndrome ("IBS").

On December 23, 2008, the Sercus filed a complaint against LabCorp alleging two causes of action: (1) negligence per se; and (2) gross negligence. Doc. #1, Exhibit A. Thereafter, LabCorp filed the present motion for summary judgment on both of the Sercus' claims for negligence per se and negligence as well as the Sercus' request for punitive damages. Doc. #36.

## II.     Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is

2

1 not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material
2 fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for
3 the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of
4 evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute;
5 there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.  Discussion**

   **A.  Negligence Per Se**

To state a claim for negligence per se, a plaintiff must establish that she belongs to the class of persons that the statute was designed to protect and that the defendant violated the statute causing plaintiff injury. *See Anderson v. Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997).

Here, the Sercus fail to state which statute, if any, LabCorp violated as well as whether Karen belongs to the group of persons the statute was intended to protect. Therefore, the Sercus have failed to establish a claim for negligence per se. Accordingly, the court shall grant LabCorp's motion for summary judgment as to this issue.

   **B.  Negligence**

To state a claim for negligence, a plaintiff must establish that: (1) defendant owed a duty to the plaintiff; (2) the defendant breached that duty causing injury to the plaintiff; (3) the breach was the actual cause of the plaintiff's injury; and (4) the injury was a foreseeable consequence of defendant's breach. *See Hammerstein v. Jean Dev. W.*, 907 P.2d 975, 977 (Nev. 1995); *see also Prescott v. United States*, 858 F. Supp. 1461, 1471 (D. Nev. 1994).

In its motion, LabCorp argues that it is entitled to summary judgment on the Sercus' negligence claim because there is no evidence that LabCorp's alleged misconduct in failing to cool Karen's blood samples was either the actual or proximate cause of her misdiagnosis and resulting IBS. *See* Doc. #36. The court shall address each argument below.

///

3

1. Actual Cause

To establish actual cause, a plaintiff must demonstrate that but for the defendant's conduct, the injury would not have occurred. *See Roe v. State*, 621 F. Supp. 2d 1039, 1057 (D. Nev. 2007). Here, the issue is whether but for the failure of LabCorp to place Karen's blood specimens immediately on ice she would not have been misdiagnosed and treated with lactulose.

LabCorp argues that there is no evidence that its alleged mishandling of Karen's blood specimens resulted in the abnormally high blood ammonia levels on which her misdiagnosis and treatment were based. Specifically, LabCorp argues that there is no evidence establishing the rate at which Karen's ammonia levels increased by LabCorp's conduct. Further, LabCorp argues that there is no evidence that prior to having her blood tested Karen's blood ammonia levels were within the normal range for her age, weight and gender, and that but for LabCorp's conduct her blood ammonia levels were erroneously elevated outside the normal range.

However, viewing the evidence in the light most favorable to the Sercus as the non-moving party, the court finds that there are disputed issues of material fact as to whether LabCorp's failure to cool Karen's blood samples elevated her blood ammonia levels. Initially, the court notes that although there is no evidence establishing Karen's exact blood ammonia levels prior to testing, there is evidence that Karen's blood ammonia levels were not at the reported abnormal levels. Specifically, subsequent medical tests ordered by Karen's surgical consultant, Dr. Robert G. Gish ("Dr. Gish"), which were conducted by a separate laboratory and placed on ice prior to processing, reported normal ammonia levels in Karen's blood. *See* Doc. #39, Exhibit 12, Gish Depo., p.53:21-54:2; Doc. #39, Exhibit 16. Further, it is undisputed that blood ammonia levels increase over time when kept at room temperature prior to testing. *See* Doc. #36, Exhibit L, Keil Depo., p:99:21-100:7 ("I can tell you that biologically if these reb blood cells are not chilled, they will continue to artificially increase the ammonia [in the cell] at room temperature, so that's just a basic fundamental biological effect of what happens to red blood cells at room temperature."). Thus,

4

there is sufficient evidence for a jury to infer that LabCorp's failure to cool Karen's blood specimens resulted in the reported abnormal ammonia levels.

Additionally, Karen's doctors have testified that but for the blood test results, Karen would not have been diagnosed with Hyperammonemia because her other symptoms alone, would not have supported the diagnosis. Karen's treating specialist, Dr. Atiggada Reddy ("Dr. Reddy"), testified in his deposition that he relied on LabCorp's test results in diagnosing Karen with Hyperammonemia and that there would be no basis for that diagnosis without the reported blood tests. *See* Doc. #39, Exhibit 13, Reddy Depo., p.43:15-44:12. Further, Dr. Gish testified in his deposition that Karen's prior doctors were responding to the abnormal ammonia test results in their diagnosis. *See* Doc. #34, Exhibit 12, Gish Depo., p.52:115-123. Moreover, Dr. Gish testified that mishandling of blood specimens can lead a diagnosis away from the actual cause of a patient's symptoms. Doc. #39, Exhibit 12, Gish Depo., p.43:19-44:2 (". . . because if [the test is] mishandled, you have high ammonia and then it takes you down a clinical route that you may not need to go down.  Q. And a clinical route that may not be in the interests of the patient?  A. It's a clinical route that may be misdirecting the clinician from looking for another cause of [the patient's] symptoms."). Therefore, based on the record before the court, the court finds that there is sufficient evidence to raise a disputed issue of material fact as to whether or not LabCorp's handling of Karen's blood samples contributed to the abnormal ammonia levels and that but for the abnormal test results Karen would not have been misdiagnosed with Hyperammonemia.

**2. Proximate Cause**

To state a claim for negligence, a plaintiff must establish that defendant's conduct was a proximate cause of her injury. *See Hammerstein*, 907 P.2d at 977. Proximate cause is an analysis of whether or not the plaintiff's injury was a foreseeable consequence of the defendant's conduct. *See Karlsen v. Jack*, 391 P.2d 319, 321 (Nev. 1964).

Here, LabCorp argues that the Sercus have failed to establish that LabCorp's conduct was

the proximate cause of Karen's injury because there is no empirical medical evidence that lactulose causes IBS. Specifically, LabCorp argues that Karen's retained expert witnesses concede that the exact causes of IBS are unknown and that there is no medical test to determine exactly what caused an individual patient's IBS. *See* Doc. #36, Exhibit J, Reddy Depo., p.31:19-20 ("Q. What are the causes of IBS?  A. There is no known cause."); Doc. #36, Exhibit M, Hinojosa Depo., p.45:14-18 ("Q. Is it possible to know what causes IBS in a patient?  A. Oh, no."). Thus, LabCorp argues that Karen's IBS was not a foreseeable consequence of LabCorp's alleged misconduct.

However, LabCorp misidentifies the key analysis for proximate cause. The question is not whether it was foreseeable that Karen's ingestion of lactulose would cause her IBS, but whether it was foreseeable that Karen would suffer a medical injury arising from her misdiagnosis as a result of LabCorp's allegedly negligent conduct. Foreseeability does not mean that the actual exact injury suffered by the plaintiff is foreseeable, but merely that the injury stems from the foreseeable consequences of defendant's conduct. *Karlsen*, 391 P.2d at 321. Based on the record before the court, the court finds that there is sufficient evidence to raise an inference that it was foreseeable that Karen could suffer a misdiagnosis and subsequent injury as a result of LabCorp's allegedly negligent handling of her blood specimens. *See e.g.,* Doc. #39, Exhibit 12, Gish Depo., p.43:19-44:2. Accordingly, the court shall deny LabCorp's motion as to the Sercus' claim for negligence.

### C. Punitive Damages

Under Nevada law, in order to recover punitive damages, a plaintiff must show the defendant acted with oppression, fraud or malice. *Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*, 863 F.Supp. 1237, 1250 (D. Nev. 1994). Oppression is a conscious disregard for the rights of others constituting cruel and unjust hardship. *Pioneer Chlor Alkali Co.*, 863 F.Supp. at 1251 (citing *Ainsworth v. Combined Ins. Co. of America*, 763 P.2d 673, 675 (Nev. 1988)). Malice is conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights and safety of others. *See* NRS § 42.005(1).

Viewing the evidence in the light most favorable to Sercus, the court finds that there is a basis to support their claim for punitive damages. There are sufficient facts for a reasonable juror to infer that LabCorp knowingly violated its own quality control policies for blood plasma specimens, and thereby consciously disregarded Karen's safety, when it failed to place her specimens on ice. *See e.g.,* Doc. #39, Exhibit 4 ("[blood] specimen must be placed on ice immediately"); Doc. #39, Exhibit 5 (stating that medical standards require placing a blood specimen on ice and testing it within thirty minutes of being drawn); Doc. #39, Exhibit 22, Yoakum Depo., p.174:21-175:5 (". . . according to the SOP it has to be on ice.  Q. And if it's not on ice should it be rejected?  A. According to the SOP it should be rejected."). Accordingly, the court shall deny defendants' motion for summary judgment in this regard.

IT IS THEREFORE ORDERED the defendant's motion for summary judgment (Doc. #36) is GRANTED in-part and DENIED in-part. Plaintiff's first cause of action for negligence per se is DISMISSED.

DATED this 4th day of March, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE